ALTHEA TRASK, Appellant, v. CHAS. G. TRASK.

Delivery of Deed to Third Person: WHEN EFFECTIVE. Where a father delivers a deed, in which his wife joins, granting land to a son, to the cashier of a bank, stating to him, that if he, the father, were taken away his son should have what he had, and that he had settled with his wife, the deed is a delivery to the bank of a conveyance *in præsenti*, and takes effect upon the death of the father, by relation, from the delivery to the bank. *Hinson v. Bailey*, 73 Iowa 544, approved.

*Appeal from Buchanan District Court.*—HON. JOHN J. NEY, Judge.

MONDAY, FEBRUARY 5, 1894.

THIS is a suit in equity, and involves the rights of the plaintiff and the defendant in certain real estate and personal property once owned by Ami H. Trask, now deceased. There was a decree in the district court for the defendant, and plaintiff appeals.—*Affirmed.*

*Charles E. Ransier* for appellant.

*E. E. Hasner* and *H. W. Holman* for appellee.

ROTHROCK, J.—Ami H. Trask was a resident of the city of Independence, in this state. He died in the month of June, 1891, at the age of about sixty-eight years. The plaintiff is his widow, and the defendant is his son. He was twice married. The defendant is the son of his first wife. He married the plaintiff

about twenty years before his death. His death was
neither sudden nor unexpected. It was caused by the
fatal disease known as cancer. The defendant was
the only child born to him, and at the time of the
father's death the son was about twenty-seven years
old, and was married. The plaintiff never had any off-
spring. During the life of Ami H. Trask, he accumu-
lated property of the value of from thirty to forty thou-
sand dollars. It consisted of farms, a livery barn and
livery stock, and city lots and bank stock, and other
property. When he married the plaintiff, she had an
estate in her own right, the value of which does not
very clearly appear. It consisted in part of a dwelling
house and some city lots. It does not appear that she
at any time transferred any of her property to the
deceased. In January, 1891, Mr. Trask went to Hot
Springs, Arkansas, for treatment of the malady with
which he was afflicted. Before making that trip he
made his last will and testament, and also a deed of
what was known as the Livery Barn Property, and
what was known as his Sumner Township Farm.
This deed was made to his son. It was signed and
acknowledged by him and his wife, the plaintiff herein.
At the same time he made to his son a bill of sale of
his personal property. All of these written instru-
ments were placed in an envelope, and delivered to the
cashier of a bank. The deceased owned other real
estate, which was then not disposed of. He returned
from the Hot Springs in the April following. After
his return there was a misunderstanding in regard to
the deed, so far as it was a conveyance of the Sumner
township farm. The plaintiff herein claimed that there
was a mistake; that she did not understand that the
deed conveyed the said farm. This claimed misunder-
standing led to a readjustment of the matter, and the
deceased and his wife each consulted attorneys, and
the attorneys conferred with each other. A final

arrangement was made by the parties, which was intended as a settlement of all their property rights. This was amicable, and appears to have been really agreed upon by the deceased and his wife, without any interference of any one. It was in pursuance of advice given by the attorneys of both the husband and wife. The attorneys did not advise as to the amount Trask should give his wife. That matter was settled by the parties themselves. In pursuance of this arrangement conveyances were made of all the remainder of the real estate owned by Trask, which deeds Mrs. Trask signed and acknowledged. A deed was made by Mrs. Trask of all her real estate to her adopted daughter, and Mr. Trask joined therein, and released any prospective right he might have in her property. Up to this time the envelope containing the will and the deed to the Sumner township farm and livery barn property, and the said bill of sale, remained in the bank. On the day that the final settlement was made, the envelope containing these instruments was taken from the bank, because it had been claimed that Mrs. Trask had not intended to execute a deed for the Sumner township farm; and a new acknowledgment was written thereto, by which she again acknowledged its execution. When this was done, and as part of this full settlement, the deceased paid to his wife the sum of three thousand, five hundred dollars, by a bank check, which was in these words:

"INDEPENDENCE, IOWA, May 9th, 1891.

*"Peoples National Bank:* Pay to Althea Trask or order ($3,500) three thousand and five hundred dollars. Settlement of all claims for dower.

"A. H. TRASK."

On the same day the will and bill of sale of the personal property and the deed of the Sumner township farm were replaced in the same envelope and returned to the bank.

This action is grounded upon the alleged fact that the deed of the Sumner township farm and the bill of sale of the personal property did not pass the title of the property to the defendant, because they were not delivered to him. This is the only real question in the case. If the delivery of the envelope containing these instruments to the bank passed the title of the property therein, the decree of the district court should be affirmed. If it did not pass the title, the decree should be reversed. Counsel for the respective parties have argued this question at great length, and with much ability. They have presented a multitude of adjudicated cases upon the question. If we were to cite and comment upon all these cases, this opinion would fill a large part of a volume of our reports, and such a review of authorities would serve no useful purpose. The rule is well settled. The difficulty arises in determining, under the facts disclosed in evidence, what rule of law applies. It is well settled, and may be said to be an established rule, that a deed may be delivered to a third person for the grantee, and, if subsequently assented to by the grantee, it will be as good a delivery as if made directly to the grantee. But a delivery of a deed to a stranger, to be delivered to the grantee at the direction of the grantor, or with a reservation of the right in the grantor to countermand it, does not pass the title. A delivery to a third person does not authorize a presumption that it is done with the intention of passing the title. The facts and circumstances attending the transaction must be such as to show that the grantor intended that the deed should be delivered by the custodian to the grantee. Every such case must be determined by the intention of the grantor. 5 Am. and Eng. Encyclopedia of Law, p. 445. In *Stow v. Miller*, 16 Iowa, 460, it is said: "If a father dies, leaving among his papers a deed of land, duly executed in form

to one of his children, the law will give effect to the same, if there is anything indicating the intention of the intestate that it should become effective. For example, the conveying to other children an equal portion of his real estate, as was done in this case, a court of equity would be much inclined, in order to effectuate the ends of justice, to declare the deed valid, as was done in the case of *Scrugham v. Wood*, 15 Wend. 545, and this is about as far as the courts have gone on this subject." The facts attending the delivery to a third person which may pass the title to the grantee are not required to be such as that it is beyond the mental power of the grantor to alter his intention, or that he has not the physical power to regain possession of the deed. *Newton v. Bealer*, 41 Iowa, 334. As we have seen, the intention of the grantor is the polar star by which courts must be guided in determining the question.

We have said that when the deed and bill of sale were delivered to the bank the last will and testament was in the same envelope. The will, so far as it relates to his wife, was as follows: "I give and bequeath to my wife Althea Trask, one third of all property of which I may die seised or possessed, whether the same is real or personal; to have and to hold the same forever, less the amount already paid to her, and paid for improving her property." At the time the papers were deposited with the bank, the testator had real estate remaining after the conveyance of the Sumner township farm. It is claimed with great confidence on the part of appellant that the grantor surely did not intend that the title should pass to his son, because, when he made the final disposition of all of his property, on the ninth day of May, 1891, he placed the will in the same envelope, and returned it to the bank. It is to be conceded that the act was not in accord with an intention that the title to the property should pass to his son;

and one or two witnesses testified that he declared to them, after the final settlement, that the papers did not amount to anything, or words to that effect. In our opinion, this and other evidence relied on by appellant is fairly overcome by the other facts and circumstances in the case, a few of which we will mention: It does not clearly appear what was indorsed on the envelope when it was delivered to the bank. It was first delivered to the cashier of the bank by Trask, in person. He stated the contents of the envelope, and told the cashier they were for Charlie, his son, if anything happened to him (the grantor). This was the day before he went to Hot Springs. After his return, and it was made known that his wife claimed that she did not intend to join in the deed to the Sumner township farm, and when the final settlement was made, the papers were withdrawn from the bank, for no other purpose than to have said deed re-acknowledged, and when that was done it was immediately returned to the bank. It appears to us that the only purpose in taking the deed from the bank was to make it effective against any assault upon it which might afterward be made by his wife. It was not under a claim that he was dissatisfied with the deed, but quite the contrary. Above all, there is the undisputed fact, standing out all through the evidence, that the settlement made on the ninth day of May, 1891, was a complete adjustment of all their family property rights; and, when the envelope, with the inclosures, was returned to the bank, they were returned for the son, and either at or about that time he stated that, if he should be taken away, his son was to have what he had, and that he had settled with his wife. This is strongly corroborated by the check for three thousand, five hundred dollars, which he gave her when the settlement was made. We might cite many other circumstances which tend to show that the title to both the real and

personal property passed by the delivery of the deed and bill of sale to the bank. But it is not necessary to further elaborate the case.

There is a question made about whether there was a change of the possession of the personal property from the father to the son. There was no occasion for such change. The son had been virtually in the actual possession for some time before the bill of sale was made. We will say that there is no claim made that the deed and bill of sale were testamentary in their character, and invalid because not executed with the formalities of a will, and the facts do not warrant any such conclusion. If the instruments were delivered to the bank as conveyances *in præsenti*, they took effect upon the death of the father, by relation, from the delivery to the bank. *Hinson v. Bailey*, 73 Iowa, 544, 35 N. W. Rep. 626. The decree of the district court is AFFIRMED.