PETERSON *v.* BISBEE.

ESCROW—CONVEYANCES—DELIVERY—TIME—REVOCATION.
.A deed delivered in escrow to be turned over to the grantee after the decease of the grantor, remaining in the hands of the depositary for upwards of nine years, when the grantor attempted to revoke it and destroyed the instrument, nevertheless passed title, as it was not subject to revocation.[1]

Appeal from Huron; Beach, J. Submitted April 20, 1916. (Docket No. 49.) Decided June 1, 1916.

Bill by Fremont Peterson against Clark J. Bisbee and others for specific performance. From a decree for complainant, defendants appeal. Affirmed.

*George M. Clark,* for defendants.

MOORE, J. This is an appeal from a decree which, omitting the formal parts, reads as follows:

"After hearing the testimony of the witnesses and the arguments of the counsel, the court, being fully advised in the premises, finds that said complainant, Fremont Peterson, made and entered into a contract with said Fannie M. Clough, now deceased, in her lifetime, for the land described in said bill of complaint as the S. E. ¼ of the N. E. ¼ of section 28, town 17 north, range 15 east, Mich., being 40 acres more or less in the township of Rubicon, in said county; that said complainant has fully performed his part of said contract; that in compliance with said contract and agreement, said Fannie M. Clough in her lifetime made and executed a deed of said land, conveying

[1]The general rule as to delivery of deed to third person to be delivered to grantee after grantor's death is discussed in a note in 54 L. R. A. 867. As to right of grantor to revoke deed delivered to stranger to be delivered by him to grantee after grantor's death, see notes in 4 L. R. A. (N. S.) 816, 9 L. R. A. (N. S.) 317.

same to said complainant, and placed same in the hands of a third party for delivery to said complainant at her decease; that said deed was destroyed without the knowledge or consent of said complainant; and that said complainant is the owner of said land.

"It is therefore ordered, adjudged, and decreed that complainant's contract with said Fannie M. Clough be specifically performed, and said complainant's said title to said land be confirmed in him and quieted as against the defendants herein, and that said complainant, Fremont Peterson, be, and he is, deemed to be the owner of said land, and that said complainant have his costs of this suit to be taxed as against said defendants."

Fannie M. Clough died April 27, 1913, aged 84 years. By a former marriage she was the mother of the complainant and of all the defendants, except Mr. Bisbee, administrator of her estate.

It is the claim of complainant that he was to take possession of and do certain things on the farm for his mother, and do other service for her, and that he was to have the farm; that, acting upon that agreement, he took possession of the farm and his mother visited a conveyancer and made a deed of the farm to him and left it with the conveyancer to be delivered to complainant on her death. It is his further claim that he performed all things he was to do, and that the defendants persuaded the mother, shortly before her death, to procure the deed from the conveyancer, and they destroyed it without her consent. It is the claim of defendants that complainant was working the farm on shares, and that the deed was destroyed by the direction of the mother. We quote from the brief of the solicitor for appellants:

"There are two questions presented by appellant which, for the purpose of argument, may be treated separately: *First*, the claimed delivery of a deed as an escrow; *second*, the claim of an oral agreement to convey."

As to the first of these claims it is urged that the mother never supposed she was alienating the title beyond recall. As to the oral agreement, it is claimed that there is an utter failure to establish it. If we omit the testimony of the complainant entirely, it is clearly shown that he went into the possession of the farm under some arrangement in March, 1904, and that at the same time his mother made a deed of the farm, naming him as grantee, and left it with the scrivener to be delivered to him on her death. The testimony as to the obtaining of the deed from the scrivener and its destruction is not very clear. The scrivener testified in part:

"I drew a deed for her. * * * I don't know just how many years ago. The deed was in favor of her son Fremont Peterson. In her last illness, a month or two before she died, she sent for me, and told me to bring all the papers of hers I had in my possession. I brought the deed and some other papers. When I gave her the deed she was in bed. There wasn't any one else in the room. She wanted to know why I hadn't sent them down. I told her 'I wouldn't give them to any one but her, and I gave them to her. Her husband was in the house, and I think there were people walking around there. At the time she drew the deed and signed it and left it with me she told me to give it to Fremont after her death. She said Fremont was a good boy, and she was fixing it up that way."

Cross-examination:

"Mrs. Clough signed the paper at my office quite a number of years ago—I don't know exactly. Fremont wasn't there. She told me to keep the deed and deliver it to him after her death. I wrote the deed. There was a provision in the deed that John was to be paid $100. She kept her papers with me. I think I did most of her business. She never talked with me from the time she left the deed with me until I returned the deed to her. I considered she had a right to take the deed back if she wanted to. I gave it to her anyway."

The husband of Mrs. Clough, who was much younger than she, testified:

"She signed the deed to Fremont 7 or 8 years ago. I don't know where she signed it, but she told me it was in Johnny Brennan's Bank. She left it in his care for Fremont Peterson, to be delivered to him after she was dead. I saw the deed when Johnny Brennan brought it home and handed her the deed.

"Q. What did she say?

"A. She didn't say anything. Johnny Brennan says, 'Here are the papers, Mrs. Clough.' 'Of course; that's all right, Mr. Brennan. I thank you for bringing them.' John and Fred Peterson were in the house at the same time. Fremont wasn't there. He didn't know she had the deed. Mr. Brennan stayed about half an hour. She was sick in bed at this time; didn't know one paper from another. All she wanted was to have the papers in her possession. This was about three weeks before her death. I took Mr. Brennan home. When I got back she was asleep. Fred and John Peterson were the only people in the house. Fred came up and told me that they had burned the deed to Fremont. Fremont didn't know then it was burned; he wasn't there at that time.    *    *    *    She told me that Fremont carried out his part of the agreement, and she was satisfied with what he had done. After the deed was burned, she called me in, and said the boys didn't care anything about her, all they cared about her was what little she had. She didn't know the deed was burned. She couldn't read and write; she signed her name by mark. She intended to give the deed to Fremont."

One of the defendants testified:

"Two or three days after the deed was burned she told me they were quarreling over papers, and that she had destroyed them. I told her she had done a wrong thing. She didn't say who was quarreling about it."

One of the defendants testified:

"I was there the day Mr. Brennan came down with the papers; guess Fred and Clough were also there. My mother told me she had sent Clough after her

papers to Brennan. * * * He (Mr. Brennan) came to the house and delivered the papers to my mother. She asked Brennan why he didn't give the papers to Levi Clough when she sent for them, and he said he would rather deliver them himself. I don't know whether the papers were in a large envelope or packed together. Fred came in while Brennan was there, Clough did not come in; he was out in the yard. She kept the papers in her possession some little time. She had the papers in her hand, and Fred was sitting close to her, and she asked him to burn the bunch of papers that she had. So Fred took the bunch of papers and went to burn them, and I said to Fred: 'Like you ought to look those papers over a little and see what is in there; there might be something in there she wouldn't want to have burned.' Fred came back. We looked at the papers and found an abstract, and I says, 'That might be some good.' So he looked the paper all through, and put them together and passed them to her, and she asked me to burn them up, which I did. Clough came in a little later. I didn't look the papers over in my hands at all, I looked on while he looked at the papers. Fred sat close to the bed. He didn't say anything about what was there."

On cross-examination:

"*By Mr. Murphy:* She had the papers in her possession before they were burned. I think Fred quoted over the different papers in looking them over. He called out an abstract, and that was the only paper I had my hands on. I don't remember him calling out a deed or a will. * * * I didn't know that she made a deed to Fremont. I didn't know that the deed was burned by me; it was all those papers in that bundle that was burned. I didn't hear Fred say anything about a deed or a will in those papers; he was looking them over and quoting them to my mother and I wasn't paying strict attention to what he said."

Fred testified the papers were burned by the direction of his mother.

There is no one who disputes the scrivener when he testified:

"At the time she drew the deed and signed it and left it with me, she told me to give it to Fremont after her death."

It was not until 9 years later that it was destroyed. There is no pretense that Fremont was consulted about its destruction, or consented thereto. The effect of making a deed and leaving it with a third party, with instructions to deliver it to the grantee upon the death of the grantor, was the subject of discussion in *Hosley* v. *Holmes*, 27 Mich. 416; *Wallace* v. *Harris*, 32 Mich. 380; *Thatcher* v. *St. Andrews Church*, 37 Mich. 264; *Latham* v. *Udell*, 38 Mich. 238; *Taft* v. *Taft*, 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291); *Jenkinson* v. *Brooks*, 119 Mich. 108 (77 N. W. 640); *Fulton* v. *Priddy*, 123 Mich. 298 (82 N. W. 65, 81 Am. St. Rep. 201); *Meech* v. *Wilder*, 130 Mich. 29 (89 N. W. 556).

We think the deed was made and delivered, and should be restored.

The decree is affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.