### COOK v. SADLER.

1. DEEDS—ESCROWS—DELIVERY WITHOUT RESERVATION PASSED PRESENT INTEREST.

Where a father and mother, who were getting old, made deeds of their farm to their two sons and delivered them to a third person with instructions to deliver them to the grantees at grantors' death, without reserving any right whatever to control or recall them, said deeds passed a present interest, although the possession was delayed until grantors' death, and the subsequent destruction by them of the deed to one of the sons, after his death, would not destroy the interest of his heirs in the land so conveyed.

On right of grantor to revoke deed delivered to stranger to be delivered by him to grantee after grantors death, see notes in 4 L. R. A. (N. S.) 816; 9 L. R. A. (N. S.) 317.

On necessity of strict compliance with conditions in escrow agreement see note in L. R. A. 1916A, 502.

2. SAME—DEATH OF GRANTEE—RIGHT OF GRANTOR TO RECALL
   DEED DELIVERED IN ESCROW.

   Where grantor's intent, when he deposited a deed in
   escrow, was to pass a present vested interest to the
   grantee, the subsequent changing of his mind, after the
   death of the grantee, would give him no right to dis-
   turb the deed or the interest so conveyed.

3. SAME—WILLS—POSTPONEMENT OF RIGHT TO POSSESSION DOES
   NOT CHANGE CHARACTER OF DEED—REVOCATION.

   The fact that the deed contained a clause postponing the
   possession and enjoyment of the estate until grantor's
   death would not make it testamentary in character, and
   therefore revokable, where by the delivery in escrow with-
   out reservation, a present vested interest in the land
   was conveyed.

Appeal from Kent; Brown (William B.), J.    Sub-
mitted April 7, 1921.    (Docket No. 43.)    Decided June
6, 1921.

Bill by Shirley Cook and another against Harriet
Sadler and others to quiet title to certain land, and
for an accounting.    From a decree for plaintiffs, de-
fendants appeal.    Affirmed.

*Smedley, Linsey & Shivel,* for plaintiffs.

*Lillie, Lillie & Lillie,* for defendants.

BIRD, J.    Henry and Phila M. Sadler were husband
and wife.    They were farmers and resided in the town-
ship of Wyoming, Kent county.    They owned and lived
upon the west half of the southeast quarter of section
32.    They had two children, Edwin and Franklin Sad-
ler.    Edwin Sadler remained at home and worked the
farm on shares.    He was given to understand by his
parents that the west 40 would be given to him.    In
1882 he was married and afterwards built, with some
help from his parents, a house on the west 40.    On

the 17th day of April, 1901, in pursuance of their promises to Edwin, the father and mother made a deed of the west half to Edwin and a deed of the east half to Franklin, and placed both deeds in the hands of Mr. Albert Burnham, a neighbor, with instructions to deliver them to Edwin and Franklin when they were both dead. After this Edwin made improvements upon the farm, aggregating about $1,000. In 1908, Edwin died, leaving a widow and one daughter. Not long after Edwin's decease Henry requested Marie Sadler, the widow, to go to Mr. Burnham and get the deed to Edwin. She did so, and Henry destroyed it, and then he and Phila M. made a deed of the west 40 direct to Marie Sadler, and placed the same in the hands of Emma Brown, a neighbor, with instructions to deliver it to Marie when both he and Phila M. had passed on.

A year or so following this Marie married a Mr. Besard and went to Canada to live. After she was gone Henry sent for the deed to Marie and destroyed it and afterwards made a deed of the west 40 to his son Franklin. This is the deed in controversy. The parties are now all dead. Phila M., the mother, died in 1912. Franklin, the son, died in 1914, and Henry, the father, died in 1915.

This contest is between the heirs of Edwin, who are plaintiffs herein, and the heirs of Franklin, who are the defendants. The plaintiffs ask in their bill that the deed from Henry and Phila M. to Franklin in June, 1910, be set aside, and that plaintiffs, as heirs at law of Edwin, be declared to be the owners thereof in fee. It is their theory that the deed from Henry and Phila M. was made and placed in escrow and passed a present interest to Edwin, and that the subsequent destruction of the deed by Henry was without law or authority. Defendants meet this by insisting that the circumstances attending the making

and deposit of the deed with Mr. Burnham indicate that it was not his intention to place the deed beyond his control, and it is further insisted that the deed was testamentary in character and that Henry and Phila M. had lawful authority to revoke or recall it. Upon the hearing the chancellor was persuaded that the theory of plaintiffs was the right one and that Henry had no legal right to destroy the deed to Edwin after placing it in escrow. The decree gave title of the west 40 to plaintiffs, and, in addition, gave them $500 as the rental value of the 40 acres during the time defendants have been in possession of it. Defendants say this was the wrong conclusion and have appealed therefrom to this court.

The questions which appear to demand our attention are:

(1) Did Henry and Phila M. have the legal right to recall their deed to Edwin?

(2) Was the deed testamentary in character?

1. Mr. Burnham, with whom the deeds were deposited, was still living and present at the hearing. He testified as follows as to the facts and circumstances surrounding the deposit:

"I live in the township of Byron, Kent county, Michigan; I am most seventy-three years old; I knew Phila Sadler and her husband, Henry Sadler, in their lifetime; I remember their coming to my place and leaving some deeds with me, but do not know when it was, but it was about fourteen or fifteen years ago; that one of the deeds ran to Franklin Sadler and the other to Edwin Sadler; that they were both alike except as to descriptions. Henry Sadler and Phila Sadler both talked to me and said that they had some deeds there and they wanted me to keep them until they were both gone, and then deliver one to Franklin and the other to Edwin; that they remained with me 14 or 15 years; I gave one to Maria Besard and the other I gave to Hiram Minderhout; that I gave the one to Maria Besard 3 years ago or better, and after

her husband died; that I gave one to Minderhout about two years ago, after Phila and Henry Sadler had both died."

On the question of depositing deeds in escrow it is observed by Gates on Michigan Real Property, § 547, that:

"When a deed which has been duly executed has been put into the hands of a third person to be, by him, delivered to the grantee at a future time or upon the performance of certain conditions or the happening of some event, it is said to be delivered 'in escrow' and the deed will not be effective unless the condition be performed or the event happens, and the Michigan courts have consistently held that where a grantor makes a deed to another and deposits the deed with a third party, to be held by such third party until the grantor's death and to be delivered to the grantee named in the deed, the grantor reserving no dominion or control over the deed during his lifetime, a valid delivery is thereby made and an immediate estate is vested in the grantee, subject to a life estate in the grantor."

The circumstances detailed by Mr. Burnham are not such as to definitely determine the question one way or the other; but we are persuaded that his testimony, considered in connection with the other testimony in the case, indicates that when Henry and Phila M. left the deeds with him they fully intended to pass a present interest to Edwin Sadler of the premises in question. It will be noted that when the deed was deposited no conditions were attached to it reserving any right whatever in the grantors to control or recall it, and, indeed, they made no effort to control it as long as Edwin was alive. They appeared to be content with it until after he died, and after he died they were content to have it remain in Edwin's family while the widow remained on the farm. It was only after she remarried and left the farm that Henry deeded the premises to his son Franklin.

The conditions as they existed when the deposit was made were that Henry and Phila M. were getting old; they had this property; they had these two boys, and their natural wish was to divide it between them. They did dispose of it, retaining the part they wanted, namely, a life use of it to themselves, and from that time on until after Edwin's death no change was made or attempted. When Henry sent for the deed to Edwin it is a significant fact that he did not disturb the deed given to Franklin at the same time, and he never attempted to revoke that one, and it is quite evident to us he would not have disturbed the deed given to Edwin if Edwin had outlived him.

Much is said by defendants' counsel of the fact that Henry sent for the deed and destroyed it after Edwin's death. It is argued from this that he kept control of the deed. We do not place much importance on this fact. Henry undoubtedly changed his mind after the death of Edwin, but this would give him no right to disturb the deed if his intent was, when deposited, to pass a vested interest to Edwin. Laymen do not generally understand the rules of law surrounding the placing of deeds in escrow. Many of them think they have a right to revoke the deed if they afterwards change their mind. Another fact lends some help in reaching this conclusion. After the deed was made and deposited Edwin finished his house, built substantial fences and planted an orchard on the west 40. In fact, he made improvements the same way a man would improve his own, or what was to be his own. This gives color to the claim that an understanding existed between him and his parents that he should have the west 40 as his own. Much support of our conclusion on this question will be found in the following cases: *Loomis* v. *Loomis,* 178 Mich. 221; *Luscombe* v. *Peterson,* 173 Mich. 165; *Wagner* v. *Kirchberg,* 166 Mich. 411; *Cooper* v. *Cooper,*

162 Mich. 304; *Young* v. *Young,* 157 Mich. 80; *Hoagland* v. *Beckley,* 158 Mich. 565; *Meech* v. *Wilder,* 130 Mich. 29.

Counsel for defendants have cited several Michigan cases which they think are controlling. The one most relied upon is *Leonard* v. *Leonard,* 145 Mich. 563. In that case it was the view of this court that the deed "never went from the control of complainant," who was the grantor. That is the crucial point in all these cases. These questions usually turn upon their own peculiar facts. The circumstances surrounding the giving of this deed and the deposit thereof lead us to the conclusion that the deed was delivered in escrow with no intention to recall it.

2. It is argued that by reason of a certain clause in the deed it was intended that the gift was to be of a testamentary character and, therefore, revokable. The deed was an ordinary form warranty deed and in addition thereto contained the following clause, which appears in italics:

"And the said Henry Sadler and Phila M. Sadler, his wife, parties of the first part, their heirs, executors and their administrators, do covenant, grant, bargain and agree to and with the said party of the second part, his heirs and assigns, that at the time of the ensealing and delivery of these presents they were well seized of the above granted premises in fee simple; and that they are free from all encumbrances whatever, *provided, that this instrument shall not take effect during the lifetime of said Henry Sadler or Phila M. Sadler, but at their decease shall become operative and in full effect,* and that they will, and their heirs, executors and administrators shall warrant and defend the same against all lawful claims whatsoever."

The ordinary mode of determining whether an instrument was intended to be a deed or a will is said to be:

"The courts in determining whether an instrument disposing of real estate is a deed or a will are guided by the following considerations: If the instrument, whatever its form or the mode of its execution, passes a present interest which vests from the time of its execution, it will be a deed, though the possession and enjoyment of the estate granted in it do not accrue to the grantee until a future time. On the other hand, if the instrument, though it is in form a deed, does not convey any vested interest, right, or estate until the death of the person executing it, it will be regarded as testamentary and revokable." 1 Underhill on Wills, § 37.

This principle has been cited and approved in *Clay* v. *Layton*, 134 Mich. 317, and *Leonard* v. *Leonard*, 145 Mich. 563.

It is quite evident from the papers themselves, together with the instructions to Mr. Burnham, as well as from the testimony at large, that Henry and Phila. M. did not intend to part with the use of said premises during their lives. They were not giving the possession of the premises during their lives to the boys, but were giving the land, the possession of which would commence when they were both dead. We think the only object of adding this clause to the deed was to secure this result and to prevent any question arising during their lives as to their right to the use and possession of the land. This was the view of the chancellor who heard the case and we agree with him. We think the conclusion reached by the chancellor was the right one and the equitable one.

The decree will be affirmed, with costs to the plaintiffs.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.