(No. 13747.—Reversed in part and remanded.)
ANDREW H. McNichols *et al.* Appellants, *vs.* MARY J.
McNichols *et al.* Appellees.

*Opinion filed October 22, 1921.*

1. DEEDS—*what constitutes sufficient delivery of a deed.* No particular form is necessary to constitute a valid delivery of a deed, but it may be by acts without words or by words without acts, or by both; and anything which clearly manifests the intention of the grantor, and of the person to whom it is delivered, that the deed shall presently become operative and effectual constitutes a sufficient delivery.

2. SAME—*a deed signed, sealed and delivered is sufficient to pass title although not acknowledged.* A deed, when signed, sealed, delivered and accepted, although it is not personally acknowledged by the grantor before the notary, is sufficient to convey all the title of the grantor except any homestead right.

3. SAME—*a deed which is not acknowledged does not convey homestead—partition.* A deed which is not acknowledged according to the provisions of the statute pertaining to the conveyance of homestead rights does not convey the homestead estate but it remains in the grantor and will pass by will to residuary devisees or to the heirs of the grantor, and they will be entitled to a partition of $1000 worth of the property included in the deed, either by actual division, or by a sale and a division of the proceeds if the property cannot be divided without manifest prejudice.

4. SAME—*when deed creates joint tenancy.* A deed which conveys and warrants to four grantees a house and lot, "not in tenancy in common but in joint tenancy," will convey the property to the grantees as joint tenants and not as tenants in common, and upon the death of one or more the survivors will become seized of the entire title in joint tenancy.

5. HOMESTEAD—*householder is not required to be head of family.* The statute does not require the householder to be the head of a family, but simply that such householder shall have a family in order to be entitled to an estate of homestead.

6. SAME—*loss of one or more members of family does not affect homestead.* A homestead right, once acquired, continues so long as the householder continues to occupy the premises, whether such householder loses one or all of the members of his or her family.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

Robert F. Munsell, for appellants.

Edmund S. Cummings, (Frederick W. Snider, of counsel,) for appellees.

Mr. Justice Duncan delivered the opinion of the court:

Andrew H. McNichols, Martin J. McNichols, John G. McNichols, Thomas J. McNichols and Margaret Fahey, (formerly Margaret McNichols,) appellants, filed their bill in chancery in the superior court of Cook county against Mary J. McNichols, Hannah E. McNichols and Signa M. Johnson, appellees, to set aside and have canceled two warranty deeds to lot 17, in block 1, in Kinney's addition to Ravenswood, known as 4837 North Ashland avenue, and situated in Chicago, in Cook county. On a hearing before the court appellants' bill was dismissed for want of equity, and the record is in this court for review by appeal.

The material facts testified to before the court are the following: Appellants and appellees, except Signa M. Johnson, are brothers and sisters and children and only heirs of Hannah McNichols, who died testate May 29, 1919, and who acquired the title of said real estate in fee simple about fourteen years before her death. Hannah McNichols was a widow, and she resided on the lot during the time that she owned it up to the time of her death. Three of her daughters, Mary J. McNichols, Hannah E. McNichols and Harriet A. McNichols, made their home with their mother on the premises during the fourteen years that she occupied them. These three daughters are designated in the record as spinsters but the ages of none of them are given. Martin J. McNichols and Edward McNichols, son and grandson of Hannah McNichols, also lived with her and paid her for their board and lodging. The building was a two-story frame building and the upper flat was at all times rented by the widow to tenants, she collecting the rents. Thomas J. McNichols was one of the occupants and

tenants of the upper flat, with his family. The widow remained in full possession of the first flat of their home up to the time of her death and looked after the household duties. She did most of the cooking and preparing of meals up until a very short time before her death, during which time she superintended such duties. She was a very intelligent woman, did a great deal of reading and besides her household duties made rag carpets, at which she was very expert. Mary J. and Hannah E. McNichols were generally employed in the city as attendants in hospitals for the insane and made their home with their mother. Harriet A. McNichols worked at Marshall Field's store, in the city, a great deal of the time, but on occasions when her mother was sick or feeble remained at home and helped with the housework. There were only a few times when the widow was not able to do or assist in doing her household work until very shortly before her death. All three of her daughters contributed to their mother's support, and particularly during the last three or four years of her life, when she was in a feeble condition by reason of a slight stroke of paralysis, which occurred in 1914, and other ailments. She was about eighty years of age when she died, and she retained at all times sufficient mental vigor and competency to understand and transact her business, including the execution of deeds and wills. She had no source of income when she died other than the rent of the upper story of her building, except the financial assistance rendered her by her said three daughters, which was very material and substantial during the last three or four years of her life.

On May 13, 1914, Hannah McNichols executed her will, devising and bequeathing to her daughters Mary J., Hannah E. and Harriet A. all the residue and remainder of her estate after the payment of her debts and funeral expenses as their absolute property, and naming Mary J. as executrix. It appears from the evidence that certain persons connected with some bank in Chicago had advised with

one of these three daughters that a more economical dispo-
sition of the real estate for the three daughters aforesaid
would be by deed, and had suggested the placing of the
title of the real estate in the name of the mother and the
three daughters as joint tenants, as there would then be
no occasion for the expense of probating a will. It further
clearly appears from the evidence that this plan was dis-
cussed by these daughters with their mother, and that they
had agreed among themselves to adopt the plan of owning
the property in joint tenancy, with right of survivorship.
For this purpose they called to the widow's home George W.
Walker, a real estate man and notary public residing in Chi-
cago. The undisputed evidence is that in January, 1918,
Walker went to the widow's house and had a conversation
with her and one of her daughters, and that she and her
daughter, pursuant to a common understanding among the
four, directed him to prepare such conveyances as would
vest the title to such real estate and three other lots in said
city in the widow and the three daughters in joint tenancy.
The three other lots appear to be unimproved lots owned
by the three daughters, each one having the title to one of
such lots. Walker suggested that the widow and the three
daughters should in one deed first convey and vest the title
to all four of the lots so owned by them in Signa M. John-
son, who was his stenographer and of mature age and had
no judgments or other claims against her, and that Miss
Johnson should convey all four of the lots back to the widow
and the three daughters by a deed that would create a joint
tenancy in the four. This suggestion was adopted by the
widow and the daughter who was then with her, and they
directed Walker to so prepare the deeds after he had satis-
fied them that there would be no necessity of any court pro-
ceeding or other expense "in probating the deeds." Walker
accordingly informed Miss Johnson of the understanding
and purpose of such deeds, and she prepared the deeds ac-
cordingly for signature and handed them to Walker in his

office. Walker directed Miss Johnson to go to the residence of the widow and have her and her daughters sign the deed conveying the title to Miss Johnson. She accordingly went to the widow's house and acquainted her with her purpose and presented the deed to the widow, who happened to be alone on that day, and the widow signed the deed and either handed it back to Miss Johnson or allowed her to return with the deed without any question or objection. The three daughters, one at a time, afterwards appeared at Walker's office and signed and acknowledged the deed before him and in his presence. Walker then filled out and signed the certificate of acknowledgment in regular form, certifying that the widow and the three daughters appeared before him in person and signed and acknowledged the deed. Miss Johnson signed and acknowledged the other deed before Walker and he attached his certificate of acknowledgment to it in regular form and she left it with him. Walker afterwards delivered both deeds to the three daughters and they were recorded in the recorder's office. The deeds are both, in form, warranty deeds bearing date February 1, 1918, reciting a consideration of ten dollars and other good and valuable consideration, and the certificates of acknowledgment are dated February 1, 1918. The deed executed by Miss Johnson recites that she conveys and warrants to said four parties, "not in tenancy in common but in joint tenancy," and it concludes with these words: "To have and to hold the above granted premises unto the said parties of the second part forever, not in tenancy in common but in joint tenancy."

Harriet A. McNichols died in March, 1919, intestate, leaving her surviving her mother and brothers and sisters as her only heirs, she never having married. On May 23, 1919, the widow, Hannah McNichols, executed her second will, by which, after the payment of all her debts and funeral expenses, she gives, devises and bequeaths to all her surviving children, (naming them,) in equal parts, all of

her property, real, personal or mixed, which she then owned or might die seized or possessed of, which will has been duly probated in the probate court of Cook county. There were a number of disputes between the widow and her daughters Mary J. and Hannah E. as to whether or not the widow had executed the warranty deed aforesaid, which is one of the deeds sought to be set aside by this bill, she insisting that she had not conveyed the property and had a right to will it by her second will, and the two daughters insisting that she had conveyed it according to the purport of the deed and that she had no right to dispose of it by will. The same dispute or question that arose between the widow and these two daughters is presented in this bill of complaint.

The bill charges fraud upon the part of the daughters and incompetency of the widow to make the one and accept the other deed in question, but there is not a scintilla of evidence supporting such charges. In fact, appellants only raise three questions on this record: (1) That there was no sufficient delivery of the first deed by the widow and there was no sufficient delivery of the second deed by Miss Johnson; (2) that the widow was a householder having a family and was residing on the lot now in question as her homestead and was entitled to a homestead therein; and (3) that the widow did not acknowledge her deed to Miss Johnson before the notary public, Walker, and properly and legally waive her homestead right in such conveyance, and did not deliver possession or surrender possession of her homestead pursuant to such deed.

Appellants have made an extended argument upon the question whether or not said deeds were delivered so as to pass the title to the real estate. Upon this proposition it is sufficient to say that the widow signed the deed to Signa M. Johnson knowing well its purpose, and either allowed her to take the deed and return it to Walker or delivered it to her for that purpose. The evidence is not

clear whether she merely allowed Miss Johnson to take the
deed after it was signed, or whether she in words assented
to her taking the deed. The same is true in regard to
the delivery of the deed by Miss Johnson. Miss Johnson
thoroughly understood the whole arrangement concerning
the execution of the deeds. With that understanding she
simply signed the deed and acknowledged it, as already
stated, and left it with Walker without any directions
whatever by words, but with the intent, as the evidence
shows, of carrying out her part of the transaction. There
was sufficient delivery of both deeds to pass title both upon
the part of the widow and of Miss Johnson. No particu-
lar form is necessary to constitute a valid delivery of a
deed. It may be by acts without words or by words with-
out acts, or by both. Anything which clearly manifests an
intention of the grantor and the person to whom it is de-
livered that the deed shall presently become operative and
effectual constitutes a sufficient delivery. (*Oliver* v. *Oliver,*
149 Ill. 542.) The grantors in these deeds lost all con-
trol over them, and the first deed was taken away from
the widow and the second deed was left by Miss Johnson
with Walker, with the intent on the part of each of them
that the deeds should become effective according to the com-
mon understanding of all of the parties to the deeds. The
widow did not acknowledge her deed before the notary
public in person, and there is no contention in the record
that she did, but she signed it and there is a seal or scroll
after her name. Such a deed, when signed, sealed, deliv-
ered and accepted, is sufficient to convey all the title of
the grantor, except as to any homestead right. *Roane* v.
*Baker,* 120 Ill. 308; *Calligan* v. *Calligan,* 259 id. 52.

The widow was a householder and had a family. She
and her three daughters lived on the premises fourteen
years, up to her death. There was a moral obligation of
support existing between these daughters and the mother.
She was morally obligated to support them and they were

morally obligated to support her. The record clearly shows that they were mutually dependent upon each other. In the last two or three years of the widow's life she was much disabled by illness from supporting herself, and it is probably true that during this time she was more dependent upon her daughters for support than her daughters were upon her. This was not the case for the first ten years or more, during which the record shows she was very active, very intelligent, and controlled and directed the affairs of her household and did about all of the work herself that was done in the household and more besides. In other words, she was the director of the affairs in the home and in that family and was within the meaning of the law the head of a family.

Our statute on homestead provides that every householder having a family shall be entitled to an estate of homestead to the extent in value of $1000 in the farm or lot of land and buildings thereon owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence. This statute does not require the householder to be the head of a family but simply that such householder shall have a family in order to be entitled to an estate of homestead. It is expressly held by this court in *Zander* v. *Scott*, 165 Ill. 51, that the statute does not make it necessary that the party claiming exemption should be the head of a family. However, we have no doubt that this widow was at one time the head of the family and acquired the right of homestead while head of such family. Where a homestead right is once acquired such right continues so long as the householder continues to occupy it, whether such householder loses one or all of the members of his or her family. *Olp* v. *Meyer*, 277 Ill. 202.

The property in question is shown to be worth about $6000. By failure of Hannah McNichols, the widow, to acknowledge her deed to Signa M. Johnson according to the provisions of the statute pertaining to the conveyance

of homestead rights, the homestead right or title to the homestead still remained in her and continued to remain in her until her death. In the absence of a will it would have descended to her heirs-at-law, but by her second will it was devised to her devisees, who are also her heirs-at-law and now own such homestead right,—that is to say, they own in fee simple, as tenants in common, $1000 worth of the lot and house in question, and it is the subject of partition, or of sale or division of the proceeds of such sale in case it cannot be partitioned without manifest prejudice. (*Hathaway* v. *Cook,* 258 Ill. 92; *Anderson* v. *Smith,* 159 id. 93.) The excess of the property in question above the $1000 worth is owned by Mary J. McNichols and Hannah E. McNichols as joint tenants, and not as tenants in common, by virtue of the deed of conveyance made by Signa M. Johnson to them and their mother and Harriet A. McNichols. On the death of Harriet her mother and her two sisters, appellees, became seized of the entire estate as joint tenants, and on the death of the mother the two daughters became seized of the entire title as joint tenants, as survivors in such joint tenancy.

The court erred in holding that the widow had no homestead right in the premises at the time of her death and that the devisees in her will took no title to said premises. Appellants are entitled to partition of the homestead right and to have the part of the lot covered by the homestead set off from the other part thereof if it can be done without manifest prejudice, and if not, to have the property sold and the proceeds thereof divided among the respective parties to this suit according to their respective interests as found by this decision.

The decree of the superior court is affirmed in part and in part reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed in part and remanded.*