GILMER *v.* ANDERSON

OPINION OF THE COURT

1. APPEAL AND ERROR—EQUITY.

An equitable judgment is viewed *de novo* on review; however, the findings of fact of the trial court are given considerable weight.

2. DEEDS—DELIVERY—INTENT.

Whether there has been a delivery of a deed is a matter of the intention of the grantor as manifested by the circumstances surrounding the questioned acts.

3. DEEDS—DELIVERY—AGENT—INSTRUCTIONS.

Delivery of a deed by the grantor to one acting exclusively as his agent without instructions, either expressed or implied, to deliver the deed to the grantee is insufficient to pass title.

4. DEEDS—DELIVERY—AGENT—INSTRUCTIONS.

A grantor's handing to his attorney instruments conveying his title to certain real property to third parties was not a delivery sufficient to pass title where the attorney had drawn

———

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 703, 822.
[2] 23 Am Jur 2d, Deeds §§ 81, 82.
[3, 4] 23 Am Jur 2d, Deeds §§ 95, 96.
[5–10] 23 Am Jur 2d, Deeds § 101 *et seq.*

up the instruments, the attorney was later called to the hospital which the grantor was in to make changes to the instruments, and the instruments were then executed, the attorney retained the instruments, the grantor gave no specific instructions concerning the instruments but did say that he and the attorney should not be hasty, and where the grantor was familiar with real estate transactions.

DISSENT BY LEVIN, J.

5. DEEDS—PASSAGE OF TITLE—DELIVERY.

*A grantor's depositing a deed with a third party who is to deliver the deed to the grantee after the grantor's death constitutes a complete delivery to the grantee and vests an immediate estate in the grantee where the grantor has not reserved any further control over the instrument, even though the third party is the grantor's agent and even though delivery to the grantee is not expected to occur and, in fact, does not occur until after the grantor's death.*

6. DEEDS—PASSAGE OF TITLE—DELIVERY.

*The grantor's intent that a deed he delivers to a third party shall be delivered to the grantee upon the grantor's death can be inferred from an examination of the facts and circumstances surrounding the transaction of delivery to the third party.*

7. DEEDS—DELIVERY—THIRD PARTY.

*The willingness of a third party to return to the grantor deeds given him by the grantor to be delivered to the grantee upon the grantor's death, which the grantor knows is imminent, is of no importance in determining whether the grantor's depositing the deeds with the third party showed the requisite intent to pass title, absent a showing that the grantor reserved the right to recall the deeds.*

8. PROPERTY—REAL PROPERTY—GIFTS—CONTEMPLATION OF DEATH.

*Just as an express reservation of a right to revoke a gift causa mortis of personal property does not affect the validity of the gift, so a gift of real property made in contemplation of death with such a reservation should play no part in determining the gift's validity.*

9. DEEDS—DELIVERY—CONTEMPLATION OF DEATH.

> *The inference that the grantor intended to pass title to real property after his death to the grantee when he delivered deeds to his attorney is the most reasonable inference even though the grantor gave no express instructions where the grantor, who died shortly after executing the deeds, realized he was dying, the grantor, not acting upon the spur of the moment, consulted with his attorney and a week later executed the deeds and delivered them to the attorney while in the hospital, the deeds stated that they were "signed, sealed, and delivered", and the grantor told the grantee and vendees of land contracts that everything had been taken care of and that they were to consult the attorney in regard to the property; the fact that the grantor told his attorney after delivering the deeds, "Let's not be too hasty," does not indicate the grantor's intent to reserve the power of revocation but could indicate the grantor's desire that delivery of the deed should be deferred until his death and is, thus, consistent with the inference that he meant that delivery to the grantees was to be made only after his death.*

10. DEEDS—DELIVERY—NECESSITY—INSTRUCTIONS.

> *Words of instruction to deliver a deed to the grantee are unnecessary when it is handed to a third person if the intention that it is to be delivered to the grantee is clearly indicated otherwise.*

Appeal from Oakland, Philip Pratt, J. Submitted Division 1 March 9, 1971, at Detroit. (Docket No. 10127.) Decided May 21, 1971. Leave to appeal denied August 12, 1971. 385 Mich 780.

Complaint by Barbara H. Gilmer, Thomas J. Gilmer, and Kathryn Lee Gilmer, by Barbara H. Gilmer, her next friend, against Robert C. Anderson to determine title to certain parcels of real estate. The administrator of the Estate of Charles Humphries intervened as a defendant. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Milton F. Cooney,* for plaintiffs.

*Robert C. Anderson, in propria persona.*

*John K. Irwin, Jr.,* for defendant administrator of the Estate of Charles Humphries.

Before: DANHOF, P. J., and McGREGOR and LEVIN, JJ.

DANHOF, P. J.   This is an action brought by plaintiffs to determine title to certain parcels of real estate.   The defendant, Robert C. Anderson, is an attorney who has in his possession certain instruments purporting to convey to plaintiffs the right, title, and interest of the late Charles N. Humphries, in certain properties he owned.   The intervening defendant is the administrator of the estate of deceased and disputes the effect of the instruments, claiming they were never delivered.

On August 1, 1967, attorney Anderson was summoned by the deceased to draw up certain instruments relating to the property he owned.   On August 2, 1967, the deceased again summoned Anderson and indicated that he wanted several changes made.   On August 8, 1967, Anderson visited the deceased in the hospital at which time the instruments were executed.   Anderson retained the instruments.   The deceased gave Anderson no specific instructions concerning the instruments.   However, the deceased did state "Let's not be hasty".   The plaintiffs contend that the delivery of the instruments to the attorney was sufficient delivery to pass title.

In a detailed and scholarly opinion the trial court held that there had not been delivery.   This case is equitable in nature and we review *de novo;* however, we give considerable weight to the findings of

the trial court. *Biske* v. *City of Troy* (1969), 381 Mich 611.

Delivery is a matter of the intention of the grantor as manifested by the circumstances surrounding the acts. *McMahon* v. *Dorsey* (1958), 353 Mich 623. In *Hooker* v. *Tucker* (1953), 335 Mich 429, 436, the Court stated:

" 'A delivery to a third person does not authorize a presumption that it is done with the intention of passing the title. The facts and circumstances attending the transaction must be such as to show that the grantor intended that the deed should be delivered by the custodian to the grantee. Every such case must be determined by the intention of the grantor.' *Trask* v. *Trask* [1894], 90 Iowa 318 (57 NW 841, 48 Am St Rep 446), as quoted with approval in *Thomas* v. *Sullivan* (1904), 138 Mich 265.

" 'As a general rule, the delivery of a deed to a third person must be for, and on behalf of, the grantee in order to constitute a delivery to the latter, and a delivery to one acting exclusively as the grantor's agent is ineffectual to transfer title to the grantee.

" 'It follows that to constitute a delivery to the grantee, there must be either expressed or implied instructions authorizing the depositary to make such delivery.' 26 CJS, p 242."

On the record before us we are not disposed to overturn the trial court's finding that there had not been delivery. The deceased, who was not unfamiliar with real estate transactions, entrusted the instruments to his agent and did not give him instructions to deliver them. The trial court did not err when it determined that the decedent did not intend a completed legal act.

Affirmed, costs to the defendant.

McGregor, J., concurred.

LEVIN, J. (*dissenting*).  The trial judge made no express finding regarding his view of the credibility of the witnesses.  It appears from his written opinion that he credited the testimony of all witnesses[1] and decided against Barbara Gilmer, not because he disbelieved her but because he concluded, as a matter of law, that she had failed to establish her claims.

The established rule of law is that if a grantor deposits a deed with a third party to be delivered to the grantee after the grantor's death, the grantor reserving no further control over the instrument, there is a complete delivery and an immediate estate is thereby vested in the grantee even though delivery of the deed to the grantee is not expected to occur and does not in fact occur until after the grantor's death.[2]

At issue is whether the instructions to the third party to deliver the deed to the grantee upon the grantor's death must be expressed in so many words or whether such instructions may be inferred from all the facts and circumstances.  And, if instructions so to deliver a deed on the grantor's death may be inferred, what inferences should be drawn on the record in this case?

Men have gone to the gallows because the trier of fact found the requisite, although unarticulated, criminal intent from the circumstances surrounding the commission of an act.  I see no reason why the

---

[1] This impression is borne out by the following which appears in the judge's opinion: "The only other conversations regarding these instruments were general in nature between Mrs. Gilmer and the decedent and the decedent and one of his land contract purchasers.  During these conversations [related at the trial by Mrs. Gilmer and the land contract purchaser, William Presson, respectively] the decedent indicated everything was 'taken care of' and that Mr. Anderson was 'taking care of things.' "

[2] *Heinecke* v. *Portus* (1941), 299 Mich 668; *Loomis* v. *Loomis* (1913), 178 Mich 221, 223, 224.

intent of a grantor that a deed he delivers to a third party shall be delivered to the grantee upon the grantor's death cannot be gathered from all the facts and circumstances. And, on the facts and circumstances of this case, it seems clear to me that the only reasonable inference is that the grantor, Charles Humphries, intended that the instruments he asked his attorney to prepare and which he signed and delivered to his attorney in anticipation of death would be delivered upon his death to Barbara Gilmer and the other grantees.

Charles Humphries had three children, two daughters, Barbara Gilmer and Jean Butler, and one son, Donald Humphries. Shortly before his death he became concerned about Barbara Gilmer's marital situation and expressed a desire to make provision for her financial future. (After Charles Humphries' death Barbara Gilmer's marriage was terminated by divorce.) Additionally, Charles Humphries expressed some displeasure about his son's wife.

On August 1, 1967, 11 days before his death, Charles Humphries purchased a certificate of deposit for $5,000 from his bank payable to himself "and/or Barbara Gilmer" and gave her the certificate. He told her that he was dying, gave her a list of pallbearers, and spoke to her about the arrangements that were to be made. He also gave her his checkbook—both she and her brother could also sign checks on his account—with instructions to pay his expenses. He also asked her to summon his attorney because he wanted to make out some deeds.

The attorney, defendant Robert C. Anderson, met with Mr. Humphries on the evening of August 1, 1967, and later that night the attorney prepared the instruments at his home. The following day

Humphries told the attorney, who again had been summoned to the Humphries home and who arrived as Humphries was departing by ambulance for the hospital, that he had changed his mind with regard to including Barbara Gilmer's husband on any deed except the one covering the Gilmer marital home and stated also that he wished his interest in a gas station to go to his grandson, the son of Donald Humphries.

The attorney made no attempt to present instruments for signature between August 2nd and August 8th. On August 8th Humphries requested that the attorney come to the hospital after visiting hours. That evening the instruments which Humphries had asked the attorney to prepare were executed, witnessed, and notarized, and the attorney took them with him when he left. The attorney did not speak with Humphries again.

Before the instruments were signed the attorney asked Humphries whether they were "his free act and deed". While the attorney could not recall Humphries' response, he remembered that "he didn't indicate anything other than that it was". And, although Humphries did not examine the instruments at "any great length," the attorney recalled "that there was no question in my mind he knew what he was doing". The attorney was asked, "Do you have any memory of any contingency or anything that he wanted in reference to that intention of having the property transferred?"; the attorney responded, "No".

All the instruments were dated August 8, 1967, and they were witnessed by the attorney and a patient who shared Humphries' hospital room. They were notarized by the attorney. Over the signatures of the witnesses the following appears on the deeds:

"Signed, sealed and *delivered* in presence of:"
(Emphasis supplied.)

Humphries did not give the attorney express
instructions regarding the delivery or recording of
the instruments and the attorney did not ask
Humphries what his wishes were in that regard.
The attorney testified that when he left the hospital
room Humphries said to him, " 'Let's not be hasty,'
or something to that effect". On August 12, 1967,
Humphries died.

A day or two after the instruments were signed
Barbara Gilmer and the attorney had a conversa-
tion which he described as follows: "She stopped in
concerning his condition. She said he was in quite
bad shape and asked—I really don't recall whether
I asked her what I should do or what because I
ended up with these instruments. I didn't know
what to do with them." He didn't believe that she
asked for them at that time. He didn't "recall any-
thing until later on after the meeting in our office at
a later date", after Humphries' death, at which time
he refused to turn the instruments over to Barbara
Gilmer.

Barbara Gilmer testified that shortly after sign-
ing the deeds her father told her that she had
"nothing to worry about; that he had everything
taken care of for me and I was to talk to Mr.
Collins," a land contract vendee of her father. (The
vendor's interest in the Collins land contract was
assigned to Barbara under the terms of one of the
instruments delivered to the attorney.) She also
said that her father told her that the attorney would
show her "how to get them recorded".

Another land contract vendee, William Presson,
visited Humphries in the hospital the day after the
instruments were signed. He testified that he was

told, " 'Bill, you have nothing to worry about,' he said, 'everything is all taken care of because Mr. Anderson will have to do that and he will take care of all of the needs if you need to know anything, call Mr. Anderson' ".

Charles Humphries, his daughter, Barbara, and his son, Donald, and, Robert Anderson, the attorney, were nearby neighbors, living in homes within a few hundred feet of each other. The Humphries' children, Barbara and Donald, and attorney Anderson had grown up together and were on friendly terms.

Following Humphries' death Mr. Anderson refused to deliver the instruments to the grantees and this litigation followed.

The instruments are: (a) quitclaim deed of one lot and parts of two others to Barbara Gilmer and her daughter, Kathryn, as joint tenants; (b) quitclaim deed to Barbara of two lots; (c) quitclaim deed to Barbara and her husband, Thomas, of the Gilmer marital home; (d) assignment of seller's interest in Presson land contract to Barbara and her daughter, Kathryn, as joint tenants; the land contract balance was $2,500; (e) assignment of seller's interest in Collins land contract to Barbara; the land contract balance was $9,150.73.

In addition, Charles Humphries executed a quitclaim deed covering the gas station operated by Donald from himself and his son, Donald, as joint tenants, to his son, Donald, and Donald's son as joint tenants with right of survivorship. This deed was signed only by Charles Humphries and not by his son, Donald.

The wisdom of these dispositions is not pertinent. The essence of the power to decide the disposition of one's property is the right to prefer one potential beneficiary over another. There is no claim or

evidence that Charles Humphries was not of sound mind. His attorney testified that there was no question in his mind that Humphries knew what he was doing.

Humphries did not act on the spur of the moment. He counseled with his attorney, and his attorney alone, for over an hour during the evening of August 1. A week elapsed between his first meeting with his attorney and the signing of the instruments. Charles Humphries' final wishes regarding the disposition of his property should be respected and should be implemented.

True, if the grantor "reserves" control of the deed when he signs and delivers it, the delivery is ineffectual.[3] There is, however, no evidence whatsoever that Charles Humphries *reserved* any control of the instruments after he delivered them to the attorney. The trial judge and the majority attach much too much significance to the ambiguous, "Let's not be hasty". The desire to live—unwillingness to accept the inevitability of death, particularly one's own death—is instinctive. "Let's not be hasty," may well have meant nothing more than, "I'm not dead yet. Don't be hasty in parting with the deeds". Such an expression is entirely consistent with an intention that the instruments would be delivered to the grantees upon Humphries' death.

Nor is it of any importance whether the attorney would have returned the instruments to Humphries had he asked for their return absent a showing that Humphries had *reserved* the right to recall them. In *Heinecke* v. *Portus* (1941), 299 Mich 668, 669,

---

[3] See *Avery* v. *Consumers Power Co.* (1934), 265 Mich 696, 700 ("the [grantor] *reserving* no further control over the instrument"); *Cook* v. *Sadler* (1921), 214 Mich 582, 586 ("the grantor *reserving* no dominion or control over the deed during his lifetime"); *Loomis* v. *Loomis, supra,* p 224 ("the grantor *reserving* no dominion or control over the deed during his lifetime"). (Emphasis supplied.)

the grantor executed a deed to property about a month before her death and two weeks before her death gave the deed to a friend who attended her during her last illness and told her to record the deed after she was gone. At the trial, on cross-examination, the friend was asked whether she would have given the deed back to the grantor if she had asked for it. The friend replied that she would have done so. The Michigan Supreme Court declared: "However, there is nothing in the record to indicate that [the grantor] ever suggested that she might ask for the return of the deed". Similarly see *Loomis* v. *Loomis* (1913), 178 Mich 221, 224: "That conclusion of the witness was based upon nothing that was said by her at the time the deposit was made".[4]

Parenthetically, I can see no sound reason why an express reservation of a right to revoke should bring about a different result. All gifts of personal property *causa mortis* are revocable at any time during the grantor's lifetime—but if he dies before he exercises that power the gift is still good.[5] There can be no reason except historical for the distinction in this regard between gifts *causa mortis* of real and personal property.

In a day and age when revocable trusts of real or personal property reserving life estates to the grantor are held to be nontestamentary[6] and have become commonplace, it seems pointless to insist on

[4] No doubt most escrow agents selected by grantors are persons in whom they have confidence and whom they trust will do their bidding. It is unlikely that a person in whom such confidence is reposed would, if requested, refuse to return instruments deposited with him even though the right to recall the instruments is not expressly reserved. But the courts do not regard that as a factor absent concrete evidence that there was a reservation of control. *Cf. Peterson* v. *Bisbee* (1916), 191 Mich 439; *Cook* v. *Sadler, supra.*

[5] 38 Am Jur 2d, Gifts, § 87, p 888.

[6] See *Goodrich* v. *City National Bank & Trust Company of Battle Creek* (1935), 270 Mich 222.

empty formulas or that square corners be cut by the uninitiated, especially one who, having engaged legal counsel, had the right to believe that the law would protect his expectations.

Here, as in *Jenkinson* v. *Brooks* (1898), 119 Mich 108, which I paraphrase, as did the Court in *Heinecke* v. *Portus,* it is entirely clear that the grantor, recognizing that death was near, intending this disposition of his property to be final, placed the instruments in the hands of the attorney without any idea of recalling them or making any other disposition of his property.

The trial judge and the majority conclude, from the attorney's failure to inquire what was to be done with the instruments and Humphries' failure to say more than he did, that Humphries had not, when he delivered the instruments to the attorney, decided to convey the properties to the named grantees. I think it more likely, if Humphries' silence has any significance—if it signifies any reservation by the grantor—it was only that the deeds were not to be delivered until his death.

On the facts presented, the most reasonable inference is that the instruments were prepared, signed, and delivered to the attorney with the understanding, albeit unstated by the grantor, that the attorney would deliver them to the grantees upon Humphries' death, which Humphries sensed was imminent.

"Words of instruction to deliver a deed to the grantee are unnecessary when it is handed to a third person if the intention that it be delivered to the grantee is clearly indicated otherwise." *McKenzie* v. *Birkholtz* (1951), 74 SD 173, 178 (50 NW2d 95, 98).[7]

---

[7] Similarly see *McNichols* v. *McNichols* (1921), 299 Ill 362 (132 NE 448).

*All* Humphries' actions are *consistent* with an intention that the instruments be delivered upon his death. He had gone to considerable trouble to no purpose if he intended that the instruments—signed with all the requisite formalities after several interviews with his attorney and apparent careful reflection—would not be delivered to the grantees. There is no evidence whatsoever that he intended that this, his last act and deed, would be held for naught.