LAPHAM *v.* LAPHAM.

DEEDS—DELIVERY.

> Deeds executed by a grantor to certain of his children for a nominal consideration, but charging the grantees with the payment of certain sums to a daughter, and reserving a life estate in himself and wife, which were delivered beyond recall to the scrivener, and after the grantor's death were put on record and delivered to his widow, who delivered them to the several grantees, *held*, to have been duly and lawfully delivered, and to be absolute deeds of conveyance of the fee to the several parcels, subject to the life estate and the liens therein created.

Appeal from Wayne; Hawley (Royal A.), J., presiding. Submitted April 13, 1927. (Docket No. 100.) Decided June 6, 1927.

Bill by George Lapham against Thomas A. Lapham and others to set aside certain deeds. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Leo S. Schrot* and *William A. Flanigan,* for plaintiff.

*Ignatius J. Salliotte,* for defendants.

CLARK, J. The trial court stated the facts:

"Charles Lapham died intestate on October 17, 1902, leaving Julia Lapham, his widow, and Benjamin, George, James, John, Thomas A., Barney, Willis, and Charles, sons, and Caroline Wiegand and May Frances Lapham, daughters, as his heirs at law. Benjamin, George, James, and John Lapham, and Caroline Wiegand were the children of his first wife, now deceased, and the remaining children were those of his second wife, Julia Lapham.

"At one time the deceased owned 250 acres of land situate in the township of Ecorse, in said county, but eventually he conveyed away as gifts a considerable

Deeds, 18 C. J. §§ 104, 541.

portion of it to his children of the first marriage. The plaintiff received from his father a deed of 40 acres of land in or about the year 1883. A 40-acre parcel of said land was also conveyed by the deceased to each of his children, Benjamin, John, and Mrs. Wiegand. James, however, received no conveyance of any real estate, and as far as the record shows, no gift or conveyance of any personal property. After the making of these conveyances there remained in the name of said deceased about 86 acres of land, and such was the situation at about the time of his death. However, shortly before his death, and on May 13, 1902, he executed four purported deeds of conveyance, one to each of his children, Thomas A., Willis, Charles, Jr., and Barney, wherein and whereby he conveyed one 20-acre parcel of said farm to Thomas A. Lapham, another 20-acre parcel to Willis, a parcel of 20 acres to Charles, Jr., and a parcel of 23 acres to Barney. Each of said conveyances was based upon a nominal consideration of one dollar, and were in fact gifts of the parcels of land severally described therein, except that each of said parcels was charged under the terms of deed thereof with the payment of two hundred fifty ($250) dollars by each of the several grantees to the daughter, May Frances Lapham. In each of said deeds was incorporated the following stipulations:

" 'This deed shall not take effect and be in force until after the death of both of the parties of the first part thereto.'

"Julia Lapham, the widow, surviving her husband, is still living, although in feeble condition both physically and mentally.

"By these conveyances the decedent conveyed away all his real estate, and no provision is made or reserved in any of the deeds for the benefit of Julia Lapham, except it be the stipulation above quoted.

"After the death of her husband, the widow occupied and operated said farm, or leased the same for many years and until on or about October 5, 1925, when she quitclaimed to her several sons, her interest in said respective parcels of said lands, and shortly thereafter said lands were sold on contract by the several sons to the real estate firm of Lieber & Norton, for a large sum of money.

"On November 12, 1902, a petition was filed in the probate court for said county of Wayne, praying for the administration of said estate and for the appointment of the said Julia Lapham as administratrix thereof. This appointment was made and she proceeded to perform the duties of her said trust. The inventory shows her receipts of personal property to have been the sum of $891.93, and her disbursements the sum of $554.91. No real estate was included in the inventory. The administration of said estate has not as yet been closed.

"On the 25th day of July, 1903, James Lapham filed his bill of complaint in this court to set aside and declare void the several deeds of conveyance executed as aforesaid by said deceased on the 13th day of May, 1902, on the ground of the alleged nondelivery of the same by the said grantors, and also on the ground that said several instruments did not operate as deeds to convey the several parcels therein described to the several grantees therein named, but were of a testamentary character and could only operate, if at all, as the last will of said deceased.

"A *pluries* subpœna was issued in said cause on January 19, 1904, and made returnable February 29, 1904, and was duly served on said plaintiff, George Lapham, on January 25, 1904, by John F. Cotter, and proof of the service thereof was filed in said cause on February 16, 1904. Plaintiff, George Lapham, did not appear in said cause, nor file answer therein, but his default was duly entered and the bill of complaint taken as confessed against him. For some unexplained reason the case was not heard in said court until 1924, and thereupon, after taking the proofs, a decree was entered and filed therein on April 26, 1924. This decree dismissed the bill of complaint and further proceeded to ascertain and determine that the plaintiff and the other brothers and sisters aside from those named in the said several deeds had no interest of any kind in said lands. Said decree is still in full force and effect and has never been appealed from, set aside, or reversed.

"The bill of complaint in this cause was filed in this court on the 30th day of October, 1925, and came on for hearing early in July last. Plaintiff's claim in his bill of complaint, as well as upon the hearing, was and

is that there was no valid delivery of said deeds of the 13th day of May, 1902, and that said purported deeds under the stipulation in each of the same cannot and do not operate as absolute conveyances and at the most are merely testamentary in character, and prays that the same may be canceled and set aside, and that the liens created in each in favor of May Frances Lapham may be declared to be void and of no effect and that the property may be sold and divided between all the heirs of said deceased, subject to the right of dower of said widow.

"The defendants claim that said conveyances were absolute in their nature, and that a valid delivery of each of the same was made by the deceased in escrow to the scrivener, Sylvester Pray, who drew them and took the acknowledgments of the same. They further claim that said instruments are not testamentary but operate as absolute conveyances, and that so far as said plaintiff is concerned, the entire matter was adjudicated and determined against him by the decree in said case of James Lapham against the defendants above named and others, and further, that he is estopped by his own laches from asserting any claim against said defendants after the lapse of so long a period of time."

The court then held that the bill should be dismissed for three reasons, former adjudication, laches, and that the instruments in question were valid and absolute deeds of conveyance, and decreed accordingly. Plaintiff has appealed.

We are in accord with the opinion of the trial court, and to dispose of the case we quote therefrom:

"I think that the foregoing considerations (former adjudication and laches) might well dispose of this case, but I prefer to base the determination thereof upon broader and perhaps less technical grounds. I am convinced from the testimony that the decedent intended these conveyances to be absolute, and that it was also his intention that the enjoyment and possession of the lands described in the respective deeds should be postponed until the death not only of himself, but of his widow, Julia Lapham, and that for

that purpose the stipulation hereinbefore quoted was incorporated in each of said deeds.    It was his desire to enjoy and possess said premises during his own lifetime and it was likewise his purpose and the purpose of both of the parties to protect and conserve the interests of Julia Lapham by permitting her the enjoyment and possession of said premises during her lifetime, thereby practically reserving to each and the survivor a life estate in said premises.    This intent is made plain by the circumstances of the case, as well as by the language of the several deeds, and said intention must be given effect by the courts.

"The language of the stipulation is similar to that contained in a conveyance in one of the most recent cases on the subject, and I think that that case is conclusive of the one at bar.    *Cook* v. *Sadler*, 214 Mich. 582.

"It is further apparent to me that in order to more effectually insure the fulfilment of his purpose, the decedent, Charles Lapham, placed said several deeds without power of recall in the hands of Sylvester Pray, with instructions to him to retain the same until after decedent's death and then to deliver them to the several parties entitled thereto.    These instructions were carried out.    Within a very few days after the death of Charles Lapham, Mr. Pray placed each of said deeds upon record, and after the same were recorded he obtained them and delivered them to Barney Lapham, who in turn handed them to his mother, Julia Lapham, and she delivered the same to the respective grantees named therein.    Such being the facts, the court holds that said instruments are absolute deeds of conveyance of the fee to the several parcels of lands described therein, subject to the life enjoyment of Julia Lapham and to the several liens created in each for the benefit of May Frances Lapham, and that the same were duly and lawfully delivered to the respective defendants therein named.

"Accordingly the bill of complaint will be dismissed, with costs to the defendants."

Decree affirmed, with costs to defendants.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.