PHENEY *v.* PETOSKEY.

1. DEEDS—TENANCY BY ENTIRETIES—MENTAL COMPETENCY OF ONE
OF GRANTORS—EVIDENCE.
    In suit to set aside parents' quitclaim deeds to their children
    of land grantors had owned as tenants by the entireties, de-
    termination of trial judge that father was mentally incompe-
    tent to execute the deeds *held*, correct, where it appears from
    medical testimony, supported by testimony of some of the
    children as well as of disinterested witnesses, that he was en-
    feebled physically as well as mentally at time of execution of
    deeds although guardian for him was not appointed until
    a year or two later.

2. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—CREDI-
BILITY OF WITNESSES.
    While the Supreme Court hears appeals in equity *de novo*, recog-
    nition is given to the fact that the trial judge is in a better
    position than an appellate court to weigh the testimony of
    each witness and to pass on incidents arising during the trial
    that tend to throw light on the matter of credibility, and his
    conclusion is not disturbed where there is competent evidence
    to sustain it and it is in accordance with the just rights of
    the parties.

3. DEEDS—MENTAL COMPETENCY—UNDUE INFLUENCE—TENANCY BY
THE ENTIRETIES.
    Where one of the parties, holding real estate as tenants by the
    entireties, is shown to have been mentally incompetent at time
    they executed quitclaim deeds to their children, such deeds
    should be set aside on that ground in suit against the grantees
    and their descendants and it becomes unnecessary to deter-
    mine whether or not the survivor was then also mentally in-
    competent or whether undue influence was exercised by certain
    of the defendants as claimed.

4. SAME—DELIVERY—PASSAGE OF TITLE—DESTRUCTION OF INSTRU-
MENT.

The destruction of a deed after a valid and unconditional
delivery thereof does not revest title in the grantor.

5. EQUITY—MODIFICATION OF DECREE—SETTING ASIDE DESTROYED
DEED—DISPOSAL OF ENTIRE CONTROVERSY.

Where the parents of several children executed quitclaim deed
of some of their land to one of the sons and his wife, placed
it in escrow, subsequently destroyed the deed and executed a
new one which did not include such wife as a grantee, and both
deeds were executed while the father was mentally incompe-
tent to do so, decree which failed to provide expressly for
cancellation of the earlier deed is modified so as to set such
deed aside and dispose of the entire matter in controversy.

Appeal from Wayne; Murphy (George B.), J.
Submitted October 3, 1945. (Docket No. 14, Calen-
dar No. 42,811.) Decided December 3, 1945.

Bill by John D. Pheney, administrator of the es-
tate of Hulda Petoskey, deceased, against Anthony
Petoskey and others to set aside quitclaim deeds.
Decree for plaintiff. Defendants Anthony, Viola,
August and Louise Petoskey appeal. Modified and
affirmed.

*Dykema, Jones & Wheat* (*Nathan B. Goodnow,* of
counsel), *John D. Pheney, in pro. per.,* for plaintiff.

*William C. O'Reilly* and *Echlin & Lendzion,* for
defendants.

CARR, J. In 1906, Rudolph Petoskey, Sr., and
Hulda Petoskey, his wife, became the owners as
tenants by the entireties of a farm in Redford town-
ship, Wayne county. Said farm contained approxi-
mately 50 acres of land. They established their
home on this farm and with the help of their chil-

dren were reasonably successful in their farm operations. Neither party was experienced in business matters and each was limited in ability to read or speak the English language. In 1928, August Petoskey, their son and one of the defendants and appellants herein, was given authority by his parents to look after certain property matters in their behalf and from that time on he represented them in business transactions.

In 1938, the probate court of Wayne county appointed a guardian for Mr. and Mrs. Petoskey, on the petition of one of their sons and apparently with the assent and approval of all of the children. Rudolph Petoskey, Sr., died July 28, 1939, being at that time 78 years of age, and his widow passed away in January, 1942. Following the death of Rudolph the present suit was instituted by the guardian and, after Mrs. Petoskey's death, was continued by said guardian as administrator of her estate.

The bill of complaint alleges that, under date of October 23, 1936, certain deeds of conveyance were purportedly executed by Rudolph and Hulda Petoskey, each such conveyance being in the form of a quitclaim deed, reserving a life estate to the grantors and conveying title in fee, subject to such life interest, to eight acres of land, more or less, described by metes and bounds. Each deed ran to one of the children, except that the conveyances to Anthony and August included their respective wives as grantees. It further appears from the record that because of some difficulty, real or fancied, later developing between Anthony Petoskey and his wife Viola, the deed to them was destroyed and a new conveyance executed, covering the same property as was described in the destroyed instrument, naming as grantees therein Anthony, August, and August's wife, Louise. This latter deed was dated

in October, 1936, as were the other conveyances referred to, but the evidence establishes that it was prepared in the late summer or fall of 1937. All of said conveyances were delivered to August Petoskey, to be held by him for the grantees, until the death of the grantors, at which time each grantee was to receive his or her deed.

The bill of complaint also alleges that, at the time of the purported execution of the conveyances referred to, both Rudolph Petoskey, Sr., and Hulda Petoskey were mentally incompetent to understand the nature and effect of the transaction, and that they were subject to undue influence exerted against them by Anthony, August and Louise. Based on such allegations, the bill prayed that the conveyances be set aside. The five living children of the grantors and the children of a deceased daughter were made defendants and answers to the bill of complaint were duly filed.

After listening to the witnesses produced in open court by the parties to the action the trial judge came to the conclusion that neither Rudolph Petoskey, Sr., nor Hulda Petoskey was mentally competent to execute the deeds of conveyance in question, in October, 1936, or subsequently thereto. He also found that August Petoskey stood in a confidential relationship to his parents and that undue influence had been exercised, as claimed by plaintiff in his bill of complaint. It was accordingly decreed that the six instruments of conveyance, offered in evidence by counsel, should be set aside, and that Hulda Petoskey was on the date of her death on January 12, 1942, the owner of the land described in said conveyance by title perfect as against the defendants. From said decree Anthony, Viola, August and Louise Petoskey have appealed. It is their claim in substance that on the issues of fact involved

in the case, the finding of the trial court is against the weight of the evidence.

On the trial plaintiff produced as a witness a physician who treated Rudolph Petoskey, Sr., during 1934, and again in September, 1936, and who expressed the opinion, based on his observation of, and contact with, the patient, that Mr. Petoskey, because of his mental and physical infirmities, was not competent to engage in a business transaction of the nature here involved during the period covered by the last-mentioned treatment. The proofs fairly establish that during 1936 and 1937, Rudolph Petoskey was in very poor health, was enfeebled both physically and mentally and was bedridden much of the time. When the last conveyance, referred to in the record as exhibit 8, was executed it appears that it was necessary to prop him up in bed to enable him to make his mark and that his condition was such that some one held his hand in order to assist him in the operation.

The testimony of the medical witness referred to is supported by other proofs, including the testimony of some of the children of the grantors, as well as testimony from disinterested witnesses. Without going into a detailed analysis of the statements made by witnesses produced on both sides, and opinions given by them, the conclusion is fully justified by the record as made before the trial court that the determination as to the mental competency of Rudolph Petoskey, Sr., was correct.

This court, in dealing with appeals in equity, has had occasion to point out, that while such matters are heard here *de novo,* recognition must be given to the obvious fact that the trial judge, having seen and heard the witnesses, is in better position than is an appellate court to weigh the testimony of each and to pass on incidents arising during the trial

that tend to throw light on the matter of credibility.

In *Quackenbush* v. *Quackenbush,* 305 Mich. 704, it was said:

"We are confronted solely with issues of fact. The rule is well established that the conclusion of the circuit judge will not be disturbed when fairly supported by the testimony, inasmuch as the trial judge sees and hears the witnesses and is in a better position to judge their credibility. However, we review chancery cases *de novo,* and we have therefore reviewed the record in this case to determine the equities."

Likewise, in *Lynder* v. *Schulkin,* 305 Mich. 451, in affirming a decree of the trial court it was said:

"We are concerned only with the finding of fact by the trial court, and while we hear chancery cases *de novo,* we are convinced that there is competent evidence to sustain the trial court's finding of fact upon this issue. Under such circumstances we do not reverse the findings of the trial court."

Likewise, in *Langdell* v. *Langdell,* 285 Mich. 268, the court said:

" 'We hear chancery cases *de novo;* but we do not, and should not, reverse decrees unless we are persuaded they are not in accordance with the just rights of the parties.' "

As above indicated the finding of the trial court with reference to the mental competency of Rudolph Petoskey, Sr., is fully supported by the record. A careful consideration of the evidence leads to the conclusion that such finding ought not to be disturbed. This renders it unnecessary to consider whether Hulda Petoskey was, in fact, also mentally incompetent at the time of the purported execution of the conveyances sought to be set aside; nor is it necessary to pass on the alleged undue influence claimed

to have been exercised by certain of the defendants. If one of the grantors was incompetent such fact is decisive of the question presented here, namely, whether the deeds referred to in the bill of complaint should be set aside. See *Lynder* v. *Schulkin, supra; Berman* v. *State Land Office Board,* 308 Mich. 143.

The record as made on the trial in the circuit court presents another matter to which attention should be given.  As stated above, exhibit 8, the conveyance to Anthony, August and Louise Petoskey, covers the same property that by prior instrument, ostensibly executed in October, 1936, had been deeded to Anthony and Viola Petoskey, which conveyance was, we may assume, destroyed.  However, the tearing up of the instrument after a valid and unconditional delivery did not revest title in the grantors. *Cook* v. *Sadler,* 214 Mich. 582.  It does not appear that there was any reconveyance to the grantors of the interest that ostensibly vested in Anthony and Viola Petoskey as tenants by the entireties at the time of the execution and delivery of the deed; nor is there any evidence in the record that Viola gave assent to the destruction of the instrument.

The pleadings do not refer specifically to this destroyed instrument although the prayer for relief, as set forth in an amendment to the bill of complaint, asks in general terms for the setting aside of all conveyances, or purported conveyances, by the grantors of the property referred to in the bill. The decree does not in express terms provide for the cancellation of this deed.  However, the record leaves no opportunity for serious question as to the situation with reference to it.  To the end that the entire controversy may be definitely and finally settled the decree of the circuit court should be modified in such manner as to specifically cover the

destroyed conveyance. Plaintiff may have leave to amend his bill of complaint in this regard. Decree will enter in this court in accordance with the foregoing opinion, with costs to appellee.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.