## McMAHON *v.* DORSEY.

1. DEEDS—DELIVERY—INTENT.
   The significance of delivery of a deed is its manifestation of the grantor's intent that the instrument be a completed legal act.

2. SAME—DELIVERY—INTENT—VOLUNTARY CONVEYANCE TO SUBJECT OF BOUNTY.
   The manual transfer of a deed is not indispensable to delivery but is evidence of delivery, the controlling factor being the intention of the grantor, especially where he makes a voluntary conveyance to grantees who are very naturally the subject of his bounty.

3. SAME—OBJECT OF DELIVERY.
   The whole object of delivery of a deed is to indicate an intent by the grantor to give effect to the instrument.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 16 Am Jur, Deeds § 108.
[2] 16 Am Jur, Deeds § 122.
[4] 16 Am Jur, Deeds §§ 138, 140.

4. SAME—DELIVERY—EVIDENCE.

> Evidence presented in suit to set aside deed by plaintiffs' decedent to defendants, husband and wife, *held*, to support trial court's finding of delivery to grantees of unrecorded deed, found in safe-deposit box rented jointly in name of decedent and defendants, where defendant husband had been raised by decedent since he was 10 years old and stayed on farm on a father-and-son arrangement to help operate it after marriage and at time deed was executed defendants agreed to pay $500 to each of decedent's sisters who survived him.

Appeal from St. Clair; Streeter (Halford I.), J. Submitted June 5, 1958. (Docket No. 22, Calendar No. 47,444.) Decided September 10, 1958.

Bill by Mary C. McMahon, individually and as administratrix with the will annexed of the estate of William J. McMahon, Ellen McMahon, and Julia McMahon against Patrick Dorsey and Hazel Dorsey to set aside deed. State of Michigan intervened as party plaintiff praying similar relief. Bill of plaintiffs McMahon dismissed, with lien granted State to assure reimbursement of certain sums. Plaintiffs McMahon appeal. Affirmed.

*McInerney & Firnschild,* for plaintiffs.

*Wilbur V. Hamm,* for defendants.

SMITH, J. This case turns upon the delivery of a deed to certain real property. The deed was found in a safe-deposit box leased in the name of William J. McMahon, the deceased grantor, and Patrick Dorsey, who, with his wife Hazel, as tenants by the entireties, were the grantees. The plaintiffs are Mr. McMahon's sole heirs.

Some 30 years ago, Mr. McMahon took into his home defendant Patrick Dorsey and Patrick's sister Bernice, then about 10 and 11-1/2 years of age, re-

·spectively. Here they lived during the years of their youth. Approximately 4 years after graduation from high school Bernice married and left the home. Patrick, however, never left the farm. He had worked it since he was a child, along with Mr. Mc-Mahon, and even after his marriage continued to reside on the place, Mr. McMahon having deeded him an acre out of the home farm, on which Patrick built his own home. As Mr. McMahon grew older he was able to do only the lighter work, Patrick doing the rest, in addition to factory work. The trial court found that the farming proceeds were split in no regularized manner, "the farm being worked on a father-and-son arrangement."

On September 18, 1954, two years before his death, Mr. McMahon tidied up his affairs. On this date he executed the deed before us, conveying to Patrick and his wife the farm (120 acres less the 1 acre previously given Patrick). On this date, also, Patrick and Hazel signed a note promising to pay to each of William's sisters the sum of $500, "to be paid within 90 days following the death of William McMahon; if any of the above-named individuals predecease William McMahon, then there shall be no obligation to pay the sum herein specified to the party who is deceased, but only to those remaining." These sums have in fact been paid.

As we have noted, the deed in controversy was found in the joint McMahon-Dorsey safe-deposit box after William McMahon's death and it was thereafter recorded by defendant Patrick Dorsey. Mr. McMahon's will, duly admitted to probate in the probate court for the county of St. Clair, gave the farm property to his wife for life (she, however, had predeceased him), remainder to his "living brothers and sisters, share and share alike." The plaintiffs herein, who are, as we noted, William's sole heirs at law, filed a bill of complaint seeking

to have the deed set aside and for other ancillary equitable relief. The trial chancellor having found for defendants, plaintiffs are before us on a general appeal. They here assert that there was never a valid delivery of the deed by William McMahon to Patrick, that such has not been established by a preponderance of the evidence, and that there is no evidence to show that William McMahon ever relinquished control of the purported deed.

The formalism with which the courts anciently treated questions of delivery has been largely abandoned. The modern inquiry places but little emphasis upon manual tradition. It has come to be recognized that, as in other situations involving the concept of "delivery" (*e.g.*, the making of gifts), the significance of delivery is its manifestation of the grantor's intent that the instrument be "a completed legal act." See Aigler's comment in 18 Mich L Rev 314. The Illinois court phrased the problem with accuracy in *Berigan* v. *Berrigan,* 413 Ill 204, 215 (108 NE2d 438), when it held:

"Delivery, in its legal and technical connotation, is a vital part of the execution of a deed and is essential to the operation and validity of the conveyance. We have stated many times that delivery of a deed is strictly a matter of the intention of the grantor as manifested and evidenced by the words, acts and circumstances surrounding the transaction. (*Alexander* v. *American Bible Society,* 407 Ill 49 [94 NE2d 833]; *Dry* v. *Adams,* 367 Ill 400 [11 NE2d 607].) Manual transfer of the deed is not indispensable to delivery but is evidence of delivery. The controlling factor in determining the question of delivery in all cases is the intention of the grantor, and this is particularly the case where the grantor makes a voluntary conveyance to grantees who are very naturally the subject of his bounty. In such cases, courts of equity are strongly inclined to carry out this intention unless to do so would run contrary

to very convincing evidence or well-established legal principles."

See, also, *Hutton* v. *Cramer,* 10 Ariz 110 (85 P 483, 103 P 497).

Likewise, we have held repeatedly that "the whole object of delivery is to indicate an intent by the grantor to give effect to the instrument." *Reed* v. *Mack,* 344 Mich 391, 397; *Gibson* v. *Dymon,* 281 Mich 137, 140.

In the case before us, however, we are not forced to the determination of intent from ambiguous circumstances. We have the unequivocal statement of the grantor himself as to his intention. The witness was Mr. Clifford Halsey, an adjoining neighbor, and justice of the peace, who had known Mr. McMahon for some 50 years, and with whom the latter had often discussed his business matters. We will proceed in the words of the record:

"*Q.* Mr. Halsey, you did have a conversation, you say, with Mr. McMahon then concerning his disposition of this farm, did you?

"*A.* Yes.

"*Q.* And what did he tell you?

"*A.* He told me that he had deeded the farm to Pat; he also had his name on the bonds.

"*Q.* And the reason for that would be why, did he tell you?

"*A.* Because he felt that he owed it to him. He said if Pat had not stayed there with him he would have been up against it for help."

The trial chancellor, upon consideration of this and other testimony and exhibits, concluded that "The intention and the desires of William J. McMahon are most obvious," and determined as a matter of fact "that the deed was delivered by William J. McMahon to Patrick Dorsey in William J. Mc-

Mahon's lifetime." We cannot say that he was in error.

Decree affirmed. Costs to appellees.

BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with SMITH, J.

DETHMERS, C. J., and CARR and KELLY, JJ., concurred in the result.